UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| CARL EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-00100 |
| v. | ) | Judge Trauger / Knowles |
| | ) | Jury Demand |
| GRAPHIC PACKAGING | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

## I.  Introduction

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 34.  Along with that Motion, Defendant has contemporaneously submitted a supporting Memorandum of Law, a Concise Statement of Material Facts, Excerpts with Exhibits from Plaintiff's Deposition, the Declaration with Exhibits of Steve Wood, Defendant's responses to Plaintiff's First Interrogatories served March 16, 2012, the Declaration of E. Jewell Johnson, and Documents obtained under subpoena from Randstad relating to Plaintiff.  Docket Nos. 34-1 - 34-7.

Plaintiff, who is proceeding pro se and in forma pauperis, has filed a "Motion to Deny Defendant's Motion for Summary Judgment," which the undersigned will construe as a Response.  Docket No. 35.  Plaintiff has not, however, responded to Defendant's Concise Statement of Material Facts or filed his own Statement of Undisputed Material Facts.

Defendant has filed a Reply (Docket No. 36), in response to which Plaintiff has filed a

1

"Reply to Deny Defendant's Motion for Summary Judgment" (Docket No. 37).

Plaintiff alleges racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000, et seq. ("Title VII"). Docket No. 1. Specifically, Plaintiff avers that Defendant discriminated against him when it failed to recall him after a layoff, and instead recalled a white employee with less seniority, who had been trained by Plaintiff. *Id.* Plaintiff filed his first EEOC Charge of Discrimination regarding Defendant in November 2008 and his second EEOC Charge of Discrimination regarding Defendant in December 2009. *Id.* Plaintiff received Right To Sue Notices on both EEOC Charges. *Id.* Plaintiff timely filed the instant lawsuit on October 26, 2010. *Id.* Plaintiff seeks $12,600 in back pay and $50,000 in punitive damages, as well as "lost wages, punitive and any other damages granted by the jury." *Id.*

Defendant filed the instant Motion for Summary Judgment and supporting materials on June 6, 2012. Docket Nos. 34 - 34-7. Defendant argues that it is entitled to a judgment as a matter of law because Plaintiff cannot establish the requisite elements of either his race discrimination or retaliation claims under Title VII. *Id.* Specifically, Defendant argues that: (1) Plaintiff was paid by a third-party staffing firm (Randstad), and his pay rate was the same or more than other contract workers; (2) all Ranstad contract workers were let go in early 2008 due to deteriorating business conditions; (3) Defendant changed contract staffing providers and requested three workers between June 2009 and December 2009; (4)Defendant offered Plaintiff a full-time job, which Plaintiff rejected; (5) upon Plaintiff's rejection of the full-time job offer, Defendant offered the same job with the same terms to another contract worker; (6) Plaintiff is a serial employment discrimination filer; and (7) the EEOC investigated and dismissed Plaintiff's

claims. Defendant contends that Plaintiff has failed to produce any direct evidence of race discrimination or retaliation; and therefore, that Plaintiff cannot establish a prima facie case of discrimination.

Plaintiff's Response essentially argues that summary judgment should be denied because he "will show" enough facts that raise a genuine issue of material fact that granting summary judgment would be inappropriate at this juncture. Docket No. 35.

Defendant has filed a Reply, arguing that Plaintiff's Response is both procedurally and substantively defective, has failed to comply with either the letter or the spirit of Local Rule 56.01, and has "simply failed to produce any evidence whatsoever" to support his race discrimination and retaliation claims. Docket No. 36.

Plaintiff's "Reply to Deny Defendant's Motion for Summary Judgment" avers that Defendant has violated the Equal Pay Act,[1] that Plaintiff "has disputed all facts by defendant because all is untrue," and that Plaintiff has "submitted evidence that show [*sic*] the defendant is covering up a discrimination action by management of (GPI) by being untruthful not only to plaintiff but to the court also." Docket No. 37. Plaintiff also asserts that the other discrimination case he filed against a different defendant was "totally different" because it was a failure to hire case. *Id.*

For the reasons to be discussed below, the undersigned finds that there are no issues as to any material fact and that Defendant is entitled to a judgment as a matter of law. Accordingly, for the reasons set forth herein, the undersigned recommends that Defendant's Motion for

---

[1] Plaintiff, however, did not aver that Defendant violated the Equal Pay Act in his Complaint or EEOC Charge of Discrimination.

3

Summary Judgment be GRANTED.

## II. Undisputed Facts[2]

Defendant is engaged in the manufacture of paperboard packaging, primarily for the consumer products industry, and it operates a folding carton manufacturing facility in Lawrenceburg, Tennessee. Docket No. 34-7, Declaration of E. Jewelle Johnson ("Johnson Dec."), ¶ 3. During 2006-2008, Defendant employed approximately 250 persons at its Lawrenceburg facility. *Id.*; Docket No. 34-4, Declaration of Steve Wood ("Wood Dec."), ¶ 3. In addition to its direct employees, Defendant also contracted with Randstad, a third party staffing company, to provide contract workers on an as needed basis. Wood Dec., ¶ 4. When Defendant had a need for contract workers, it contacted Randstad and notified Randstad of the worker skill set needed, but did not request specific individuals. *Id.* Steve Wood, Logistics Manager for Defendant at all times relevant to the case at bar, personally contacted Randstad to request contract workers, and never had the occasion to turn down a contract worker assigned by Randstad. *Id.*

Randstad recruited, interviewed, and assigned contract workers to Defendant at the Lawrenceburg facility, and Randstad paid and handled all payroll functions for the contract workers it assigned. *Id.*, ¶ 5. While Defendant provided Randstad with feedback on the performance of the contract workers, Randstad was ultimately responsible for the contract workers' hourly pay rate. *Id.*

Between July 2006 and May 2008, approximately 21 contract workers, including

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

Plaintiff, were assigned by Randstad to work in Mr. Wood's department at Defendant's Lawrenceburg facility as fork lift operators. *Id.* The majority of these contract workers were Caucasian. *Id.*

Plaintiff completed a work application with Randstad, was interviewed by Randstad, and was assigned by Randstad to work as a contract worker operating a forklift at Defendant's Lawrenceburg facility starting in July 2006. Docket No. 34-3, Excerpts from the Deposition of Carl Evans ("Plaintiff's Dep."), pp. 39-42, 67-68; Woods Dec., ¶ 6. Plaintiff continued to work at that facility until approximately April 1, 2008, when Defendant no longer had a need for contract workers and Plaintiff's work assignment ended. *Id.* While working at Defendant's facility, Plaintiff was supervised by Randy Harris, who reported to Mr. Wood. Plaintiff's Dep., pp. 67-68; Woods Dec., ¶ 6.

Randstad paid Plaintiff while he worked at Defendant's Lawrenceburg facility. Plaintiff's Dep., pp. 39-42; Woods Dec., ¶ 7. Every contract worker in Mr. Wood's department at the Lawrenceburg facility started at an $8.50 per hour pay rate, including Plaintiff. Woods Dec., ¶ 7; *see also*, Plaintiff's Dep., pp. 52-53, 104-06. Plaintiff, Kenneth Simbeck, and Ray Krieger (two other contract workers) received $1.00 per hour pay increases while they worked for Defendant. *Id.*

While Plaintiff was working as a contract worker at Defendant's Lawrenceburg facility, Defendant asked him to complete an employment application and apply for a full time Utility position. *Id.*, ¶ 8; Plaintiff's Dep., pp. 42-46, 106, and Ex. 3, 4. Plaintiff completed the application, and Defendant offered him a full time Utility position at the pay rate of $9.98 per hour, plus benefits. *Id.*; Plaintiff's Dep., pp 42-52, 106, and Ex. 5. Plaintiff rejected Defendant's

offer of full time employment.  *Id.*  Upon Plaintiff's rejection of Defendant's full time Utility position job offer, Defendant offered Randstad contract worker Kenneth Simbeck (Caucasian) the exact same position at the exact same terms as had been in Plaintiff's offer.  *Id.*; Plaintiff's Dep., pp. 58-61 and Ex. 6.  Mr. Simbeck accepted the job offer.  *Id.*

In early 2008, Defendant began reducing the number of contract workers at its Lawrenceburg facility due to deteriorating economic conditions and a slow down in work.  *Id.*, ¶ 9; Plaintiff's Dep., pp. 61-63.  By April 1, 2008, all Randstad contract workers had been let go except Plaintiff and Ray Kreiger (Caucasian).  *Id.*  Plaintiff and Mr. Kreiger had been let go on or around that time.  *Id.*  After April 1, 2008, no Randstad contract workers were working at Defendant's Lawrenceburg facility.  *Id.*

In May 2008, one of Defendant's fork lift operators suffered a heart attack and went on medical leave.  *Id.*, ¶ 10; Plaintiff's Dep., pp. 81-83.  Mr. Wood contacted Randstad and asked it to provide a temporary worker to fill in for the employee on medical leave.  Wood Dec., ¶ 10.  Randstad assigned Mr. Kreiger to fill the temporary position.  *Id.*  Mr. Kreiger was a Randstad contract worker who was let go from Defendant's Lawrenceburg facility at the same time as Plaintiff (on or about April 1, 2008).  *Id.*  Mr. Wood did not request that Randstad assign Mr. Kreiger for the contract work; rather, Mr. Wood informed Randstad of the worker skill set needed.  *Id.*  Mr. Kreiger worked at Defendant's Lawrenceburg facility as a temporary worker filling in for the employee on medical leave between May 28, 2008 and August 29, 2008.  *Id.*

Later in 2008, Defendant ended its contract with Randstad to supply contract labor to the Lawrenceburg facility.  Johnson Dec., ¶ 3.  In 2009, Defendant entered into a contract with Wise Staffing Services for the provision of contract labor to the Lawrenceburg facility.  *Id.*  The

6

economy began to pick up in 2009 and Defendant once again had the need for contract workers at its Lawrenceburg facility. Woods Dec., ¶ 11. Between June 2009 and December 2009, Wise Staffing Services assigned a total of 3 workers to Mr. Wood's department at the Lawrenceburg facility, 2 of whom were Caucasian and 1 of whom was African-American. *Id.* As with Randstad, Mr. Wood called Wise Staffing Services and informed Wise of the worker still set needed, but did not request specific individuals. *Id.* Wise Staffing Services made the assignment decisions. *Id.*

Mr. Wood has no knowledge whether Plaintiff applied for a contract worker position (or any other position) with Wise Staffing Services in June 2009 or at any other time. *Id.* Mr. Wood is likewise unaware of anyone at Defendant's Lawrenceburg facility having knowledge whether Plaintiff applied for a contract worker position (or any other position) with Wise Staffing Services in June 2009 or at any other time. *Id.* Mr. Wood never informed Wise Staffing Services that Plaintiff filed an EEOC Charge of Discrimination against Defendant, nor is Mr. Wood aware that anyone else did. *Id.*

Plaintiff admits that he never applied for a job directly with Defendant in June 2009 or any other time after his contract assignment with Randstad ended in April 2008. Plaintiff's Dep., p. 117.

### III. Applicable Law and Analysis

**A. Local Rules 56.01(c) and (g)**

With respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...

> . . .
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Concise Statement of Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

## **B. Motion for Summary Judgment**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to appropriately respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below. Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could

8

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. Title VII of the Civil Rights Act of 1964**

    **1. Generally**

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) (*citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991)). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52 L. Ed. 2d 571 (1977). The wording of the allegations in the EEOC charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC charge if those allegations could reasonably be expected to grow out of the

charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir. 1971) (*citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465-66 (5th Cir. 1970)*; King v. Georgia Power Co.*, 295 F.Supp. 943 (N.D. Ga. 1968)).

## 2.  Prima Facie Case of Discrimination

In order to establish a prima facie case of discrimination in violation of Title VII, a plaintiff must prove that,

> 1) he is a member of a protected class;
>
> 2) he was qualified for his job and performed it satisfactorily;
>
> 3) despite his qualifications and performance, he suffered an adverse employment action;[3] and
>
> 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (footnote added).

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

---

[3] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated him because of his protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then show that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

### 3. Prima Facie Claim of Retaliation

An employer may not retaliate against an employee because he has opposed an unlawful employment practice, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires a plaintiff to demonstrate that:

1. he or she engaged in a protected activity;

2. the defendant knew that the plaintiff was exercising protected rights;

3. the plaintiff suffered an adverse employment action or was subjected to severe or pervasive retaliatory harassment by a supervisor; and

4. there was a causal connection between the protected activity and the adverse employment action or harassment.

*Little v. BP Exploration and Oil Co.,* 265 F.3d 357, 363 (6th Cir. 2001); *Morris v. Oldham Co. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Retaliation claims are evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 862 (6th Cir. 1997).

## D. The Case At Bar

Plaintiff has filed suit claiming discrimination and retaliation. With regard to Plaintiff's discrimination claim, as has been noted, the following facts are undisputed:

Defendant contracted with Randstad (and later with Wise Staffing Solutions, both third party staffing companies) to provide contract workers to Defendant's Lawrenceburg facility on an as needed basis. Wood Dec., ¶ 4, 11; *see also* Johnson Dec., ¶ 3. When Defendant had a need for contract workers, it contacted Randstad (or later Wise Staffing Solutions) and notified it

of the worker skill set needed, but did not request specific individuals. *Id.* Randstad (and later Wise Staffing Solutions) made the assignment decisions. *Id.*

Plaintiff completed a work application with Randstad, was interviewed by Randstad, and was assigned by Randstad to work as a contract worker operating a forklift at Defendant's Lawrenceburg facility starting in July 2006, and continuing through until approximately April 1, 2008, when Defendant no longer had a need for contract workers and Plaintiff's work assignment ended. Docket No. 34-3, Excerpts from the Deposition of Carl Evans ("Plaintiff's Dep."), pp. 39-42, 67-68; Woods Dec., ¶ 6.

Randstad paid Plaintiff while he worked at Defendant's Lawrenceburg facility. Plaintiff's Dep., pp. 39-42; Woods Dec., ¶ 7. Every contract worker in Mr. Wood's department at the Lawrenceburg facility started at an $8.50 per hour pay rate, including Plaintiff. Woods Dec., ¶ 7; *see also*, Plaintiff's Dep., pp. 52-53, 104-06. Plaintiff, Kenneth Simbeck, and Ray Krieger (two other contract workers) received $1.00 per hour pay increases while they worked for Defendant. *Id.*

While Plaintiff was working as a contract worker at Defendant's Lawrenceburg facility, Defendant asked him to complete an employment application and apply for a full time Utility position. *Id.*, ¶ 8; Plaintiff's Dep., pp. 42-46, 106, and Ex. 3, 4. Plaintiff completed the application, and Defendant offered him a full time Utility position at the pay rate of $9.98 per hour, plus benefits. *Id.*; Plaintiff's Dep., pp 42-52, 106, and Ex. 5. Plaintiff rejected Defendant's offer of full time employment. *Id.* Upon Plaintiff's rejection of Defendant's full time Utility position job offer, Defendant offered Randstad contract worker Kenneth Simbeck (Caucasian) the exact same position at the exact same terms as had been in Plaintiff's offer. *Id.*; Plaintiff's

14

Dep., pp. 58-61 and Ex. 6. Mr. Simbeck accepted the job offer. *Id.*

Because it is undisputed that Randstad (not Defendant) assigned Plaintiff to his temporary position and paid him; that Plaintiff's starting wage was the same as every worker in his department; that he was one of three workers to receive a $1 per hour pay increase; that he was offered a full time position with Defendant, which he declined; and that the person who ultimately accepted the position that Plaintiff rejected was offered the same terms as had been offered to Plaintiff, Plaintiff has failed to establish the requisite elements of a prima facie case of discrimination. Accordingly, Defendant is entitled to a judgment as a matter of law on Plaintiff's discrimination claim.

With regard to Plaintiff's retaliation claim, although Plaintiff asserts that Defendant's failure to re-call him as a worker in June 2009 when it needed workers again was retaliatory, the following facts are undisputed.

Defendant contracted with Randstad (and later with Wise Staffing Solutions, both third party staffing companies) to provide contract workers to Defendant's Lawrenceburg facility on an as needed basis. Wood Dec., ¶ 4, 11; *see also* Johnson Dec., ¶ 3. When Defendant had a need for contract workers, it contacted Randstad or Wise Staffing Solutions and notified it of the worker skill set needed, but did not request specific individuals. *Id.* Randstad and Wise Staffing Solutions made the assignment decisions. *Id.*

In early 2008, Defendant began reducing the number of contract workers at its Lawrenceburg facility due to deteriorating economic conditions and a slow down in work. *Id.*, ¶ 9; Plaintiff's Dep., pp. 61-63. By April 1, 2008, all Randstad contract workers had been let go except Plaintiff and Ray Kreiger (Caucasian). *Id.* Plaintiff and Mr. Kreiger had been let go on

15

or around that time. *Id*. After April 1, 2008, no Randstad contract workers were working at Defendant's Lawrenceburg facility. *Id.*

Plaintiff admits that he never applied for a job directly with Defendant in June 2009 or any other time after his contract assignment with Randstad ended in April 2008. Plaintiff's Dep., p. 117.

Mr. Wood, Defendant's Logistics Manager at all times relevant to this action, has no knowledge whether Plaintiff applied for a contract worker position (or any other position) with Wise Staffing Services in June 2009 or at any other time. *Id.* Mr. Wood is likewise unaware of anyone at Defendant's Lawrenceburg facility having knowledge whether Plaintiff applied for a contract worker position (or any other position) with Wise Staffing Services in June 2009 or at any other time. *Id.* Mr. Wood never informed Wise Staffing Services that Plaintiff filed an EEOC Charge of Discrimination against Defendant, nor is Mr. Wood aware that anyone else did. *Id.*

Because it is undisputed that Wise Staffing Solutions made the 2009 staffing decisions; that Defendant was unaware whether Plaintiff had applied to Wise Staffing Solutions for any position; that Defendant did not inform Wise Staffing Solutions that Plaintiff had filed an EEOC Charge of Discrimination against Defendant, Plaintiff cannot establish his prima facie case of retaliation, and Defendant is entitled to a judgment as a matter of law on this claim.

## VI. Conclusion

For the foregoing reasons, the undersigned concludes that there are no genuine issues as to any material fact and that Defendant is entitled to a judgment as a matter of law. Accordingly,

the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                                                                  _____
                                                                                  E. CLIFTON KNOWLES
                                                                                  United States Magistrate Judge